UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

LEE FLOYD KIBLER,

          Petitioner,

    v.                                   Case No. 03-cv-4154-JPG

UNITED STATES OF AMERICA,

          Respondent.

**MEMORANDUM AND ORDER**

This matter comes before the Court on petitioner Lee Floyd Kibler's ("Kibler") motion to vacate, set aside or correct his sentence pursuant to 28 U.S.C. § 2255 (Doc. 1). The government has responded to the motion (Doc. 11), and Kibler replied to that response (Doc. 28). In the wake of *Blakely v. Washington*, 542 U.S. 296 (2004), the Court allowed Kibler to amend his petition (Docs. 31 & 33). The government responded to the amendment (Doc. 34). The Court also ordered further briefing on several issues, and Court considers the government's and Kibler's supplemental briefs (Docs. 39, 47 & 48). The Court also considers numerous other motions filed by Kibler in this proceeding (Docs. 2, 18-24, 26 & 41).

I.      **Background**

In January 1998, Kibler was indicted on one count of conspiring to distribute crack cocaine in violation of 21 U.S.C. §§ 846 and 841(a)(1) (count 1) and two counts of possessing with intent to distribute crack cocaine in violation of 21 U.S.C. § 841(a)(1) (counts 2 & 3). The indictment charged no specific drug amounts. In addition, the government filed an information pursuant to 21 U.S.C. § 851 based on Kibler's two prior felony drug sentences. Kibler was represented at the trial level by attorney John D. Stobbs III ("Stobbs").

Before Kibler's trial, Stobbs filed several motions to suppress. The first was denied by

the Court because it was too vague, but the second contained more details.  It related to a February 1997 search of Kibler's house, authorized by a warrant, in which two scales, a police scanner, sandwich bags and approximately $1500 in cash, but no drugs, were found.  The warrant was issued based in part on Mount Vernon Police Detective Jim Hawkins's ("Hawkins") affidavit relating statements made by Elizabeth Goosby ("Goosby") regarding drug activities in Kibler's home.  After the search, officers arrested Kibler and brought him to the police station, where he initialed but did not sign a form setting forth the warnings called for by *Miranda v. Arizona*, 384 U.S. 436 (1966), and then allegedly made self-incriminating statements to then-Mount Vernon Police Detective Sergeant Chris Mendenall ("Mendenall").  The motion to suppress alleged that the warrant lacked the requisite specificity, the *Miranda* warnings were not adequate, Kibler's statements were obtained by coercion and the warrant was not supported by probable cause.  The Court held a hearing on the motion at which only Mendenall testified; Kibler called no witnesses.  The Court ultimately determined that the motion was without merit.[1]

In June 1999, a jury found Kibler guilty on all three counts.  The verdict forms contained no specific drug amounts.

On April 20, 2000, the Court held a sentencing hearing at which Kibler was represented

---

[1]Stobbs filed a third motion to suppress involving the alleged improper and unethical use of government witnesses who have received or will receive lesser sentences or reductions in sentence in return for their testimony.  The proposition that such conduct is improper was set forth by the Tenth Circuit Court of Appeals in *United States v. Singleton*, 144 F.3d 1343 (10th Cir. 1998), which has since been vacated by an *en banc* panel of the Tenth Circuit Court of Appeals.  *See United States v. Singleton*, 165 F.3d 1297 (10th Cir. 1999).  The Seventh Circuit Court of Appeals has firmly rejected *Singleton*'s original holding.  *See United States v. Condon*, 170 F.3d 687, 688 (7th Cir. 1999).  This motion to suppress is not relevant to this § 2255 motion.

by new counsel Terry Green ("Green").[2]  At sentencing, the Court found by a preponderance of the evidence that Kibler's relevant conduct was at least 500 grams but less than 1.5 kilograms of crack cocaine, which under United States Sentencing Guideline[3] ("U.S.S.G.") § 2D1.1 yielded a base offense level of 36.  The Court further found that Kibler was a career offender under U.S.S.G. § 4B1.1 based on his two prior drug felony convictions, which raised his offense level to 37 and established his criminal history category as VI.  In view of the § 851 enhancement for Kibler's two prior drug felony convictions, the Court found that Kibler was subject to a mandatory life sentence for count 1.  *See* 21 U.S.C. § 841(b)(1)(A).  Considering the statutory maximum sentences set forth in § 841(b)(1)(B) and (C), the Court found that the guidelines established a sentence of 360 months for count 2 and a sentencing range of 360 to life for count 3.  The Court sentenced Kibler to serve a life sentence on count 1 and 360 months on counts 2 and 3, all sentences to be served concurrently.

Kibler appealed to the Seventh Circuit Court of Appeals, still represented by Green.  On appeal, Green argued that the Court erred in allowing admission of evidence of Kibler's prior convictions, of uncharged criminal conduct, and of Kibler's immoral conduct that could have been tinged with race issues.  He also argued that Kibler's sentence violated the principles announced in *Apprendi v. New Jersey*, 530 U.S. 466 (2000), because his sentence exceeded the sentence established under 21 U.S.C. § 841(b)(1)(C) for unspecified amounts of crack cocaine

---

[2]Kibler's sentencing occurred before the Supreme Court decided *Apprendi v. New Jersey*, 530 U.S. 466 (2000), *Blakely v. Washington*, 542 U.S. 296 (2004), and *United States v. Booker*, 543 U.S. 220 (2005).  The impact of those decisions on Kibler's case is discussed later in this order.

[3]Unless otherwise noted, the references to the guidelines in this order are to the 1998 United States Sentencing Guidelines Manual.

by a defendant with prior felony convictions.  The Court of Appeals found no reversible error, affirmed Kibler's conviction and sentence on February 1, 2002, and entered its mandate on February 25, 2002.  *United States v. Kibler*, 279 F.3d 511 (7th Cir. 2002).  Kibler petitioned the United States Supreme Court for a writ of *certiorari*, which it denied on October 7, 2002.  *Kibler v. United States*, 537 U.S. 849 (2002) (Table).

Kibler filed this timely § 2255 motion on September 4, 2003.  In it, Kibler asks the Court to vacate his conviction and sentence because his trial and appellate counsel were constitutionally ineffective in violation of his Sixth Amendment rights.  In his August 4, 2004, amendment, Kibler advances a direct challenge to his sentence based on *Apprendi v. New Jersey*, 530 U.S. 466 (2000), and *Blakely v. Washington*, 542 U.S. 296 (2004).

In response, the government argues that neither Kibler's trial counsel nor his appellate counsel were constitutionally ineffective and that *Blakely* is not retroactively applicable to cases on collateral review.

## II.    § 2255 Standard

The Court must grant a § 2255 motion when a defendant's "sentence was imposed in violation of the Constitution or laws of the United States." 28 U.S.C. § 2255.  However, "[h]abeas corpus relief under 28 U.S.C. § 2255 is reserved for extraordinary situations." *Prewitt v. United States*, 83 F.3d 812, 816 (7th Cir. 1996).  Relief under § 2255 is available only if an error is "constitutional, jurisdictional, or is a fundamental defect which inherently results in a complete miscarriage of justice." *Barnickel v. United States*, 113 F.3d 704, 705 (7th Cir. 1997) (quotations omitted).  It is proper to deny a § 2255 motion without an evidentiary hearing if "the motion and the files and records of the case conclusively demonstrate that the prisoner is entitled to no relief." 28 U.S.C. § 2255.

4

A § 2255 motion does not substitute for a direct appeal.  A defendant cannot raise in a § 2255 motion constitutional issues that he could have but did not raise in a direct appeal unless he shows good cause for and actual prejudice from his failure to raise them on appeal or unless failure to consider the claim would result in a fundamental miscarriage of justice.  *Massaro v. United States*, 538 U.S. 500, 504 (2003); *Wainwright v. Sykes*, 433 U.S. 72, 87 (1977); *Fountain v. United States*, 211 F.3d 429, 433 (7th Cir. 2000);  *Prewitt*, 83 F.3d at 816.  A defendant cannot raise in a § 2255 motion nonconstitutional issues that he failed to raise on direct appeal regardless of cause and prejudice.  *Lanier v. United States*, 220 F.3d 833, 842 (7th Cir. 2000).

Neither is a § 2255 motion necessarily a second chance at a successful appeal.  The Court may refuse to consider issues in a § 2255 motion that a defendant raised on direct appeal where there are no changed circumstances of fact or law.  *Olmstead v. United States*, 55 F.3d 316, 319 (7th Cir. 1995);  *Belford v. United States*, 975 F.2d 310, 313 (7th Cir. 1992).

The failure to hear a claim for ineffective assistance of counsel in a § 2255 motion is generally considered to work a fundamental miscarriage of justice because often such claims can be heard in no other forum.  They are rarely appropriate for direct review since they often turn on events not contained in the record of a criminal proceeding.  *Massaro*, 538 U.S. at 504-05; *Fountain*, 211 F.3d 433-34.  In addition, the district court before which the original criminal trial occurred is in the best position to initially make the determination about the effectiveness of counsel in a particular trial and the potential prejudice that stemmed from that performance. *Massaro*, 538 U.S. at 504-05.  For these reasons, the Court finds that Kibler has not procedurally defaulted his ineffective assistance of counsel claims.

5

### III.   Analysis

The Court finds that Kibler has not presented any evidence or argument meriting either a hearing or relief under § 2255.  As noted earlier in this order, Kibler asks the Court to vacate his conviction on the basis of several alleged instances of ineffective assistance of his trial and appellate counsel.  A party claiming ineffective assistance of counsel bears the burden of showing (1) that his counsel's performance fell below objective standards for reasonably effective representation and (2) that this deficiency prejudiced the defense.  *Strickland v. Washington*, 466 U.S. 668, 688-94 (1984);  *Fountain v. United States*, 211 F.3d 429, 434 (7th Cir. 2000).  The plaintiff's burden is heavy because the *Strickland* test is "highly deferential to counsel, presuming reasonable judgment and declining to second guess strategic choices." *United States v. Shukri*, 207 F.3d 412, 418 (7th Cir. 2000) (quotations omitted).

To satisfy the first prong of the *Strickland* test, the plaintiff must direct the Court to specific acts or omissions of his counsel.  *Fountain*, 211 F.3d at 434 (citing *United States v. Trevino*, 60 F.3d 333, 338 (7th Cir. 1995)).  The Court must then consider whether in light of all of the circumstances counsel's performance was outside the range of professionally competent assistance.  *Id.*  Counsel's performance must be evaluated keeping in mind that an attorney's trial strategies are a matter of professional judgment and often turn on facts not contained in the trial record.  *Id.*  The Court cannot become a "Monday morning quarterback." *Harris v. Reed*, 894 F.2d 871, 877 (7th Cir. 1990).  To satisfy the second prong of the *Strickland* test, the plaintiff must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different.  *Fountain*, 211 F.3d at 434.

The Court will first address the performance of Kibler's trial counsel, then the performance of his appellate counsel.

6

A.    Trial Counsel's Effectiveness

For the following reasons, the Court finds that Stobbs was not constitutionally ineffective in relation to Kibler's pretrial and trial proceedings.  The Court will address each alleged instance of ineffectiveness in turn.

1.    Failure to Obtain Suppression of Evidence

a.    Statements

Kibler argues that Stobbs was ineffective because he failed to conduct an investigation to show that Kibler's post-arrest statements were inadmissible at trial.  He believes that there was no probable cause for his arrest and that the self-incriminating statements he gave to law enforcement during his detention were therefore inadmissible.  The government argues that Stobbs filed an appropriate suppression motion seeking to suppress both the items found in the search and Kibler's post-arrest statements.

The Court finds that Kibler has not alleged anything that amounts to constitutionally ineffective assistance of counsel.  When a petitioner alleges that his counsel failed to conduct an adequate investigation, he must "provide the court sufficiently precise information, that is, a comprehensive showing as to what the investigation would have produced." *Richardson v. United States*, 379 F.3d 485, 488 (7th Cir. 2004) (internal quotations omitted); *Hardamon v. United States*, 319 F.3d 943, 951 (7th Cir. 2003).  Without such information, the petitioner cannot show that constitutionally adequate counsel would have taken any different approach or given any different advice than his actual counsel did.  *See Richardson*, 379 F.3d at 488.  Similarly, when a petitioner alleges that his counsel was deficient for failing to present evidence, he must demonstrate what evidence the attorney should have presented and that the presentation of such evidence had a reasonable probability of changing the result.  *Fuller v. United States*,

7

398 F.3d 644, 652 (7th Cir.), *cert. denied*, 126 S. Ct. 238 (2005);  *Berkey v. United States*, 318 F.3d 768, 774 (7th Cir. 2003), *cert. denied*, 541 U.S. 1055 (2004).

In this case, Kibler has utterly failed to make the required showings.  He has not given any information about what Stobbs could have found had he conducted a more thorough investigation of the circumstances surrounding the search of Kibler's house and his subsequent questioning that would have caused him to pursue suppression of evidence in way different than he actually did.  Furthermore, Kibler has not pointed to any evidence that Stobbs could have but did not present in the suppression proceedings that actually occurred.

To the extent Kibler may be faulting Stobbs for not calling him as a witness in his own suppression hearing to testify about events relating to his questioning by Mendenall, the Court finds that Stobbs's decision was within the realm of competent counsel.  At the time of the suppression hearing, the government had not yet filed the § 851 enhancement alleging Kibler's prior felony drug convictions.  As a consequence, at the time of the hearing, it appeared that the charged offense did not carry a mandatory life sentence and that an obstruction of justice enhancement under U.S.S.G. § 3C1.1 could have increased Kibler's sentencing range under the guidelines.  Had Stobbs called Kibler to testify, had a jury ultimately convicted him, and had the Court determined that Kibler lied at the suppression hearing, Kibler would have faced the possibility of a two-point offense level enhancement for obstruction of justice under U.S.S.G. § 3C1.1.  It was a reasonable decision not to risk this sentencing enhancement.

For these reasons, Kibler cannot show that Stobbs was deficient in his approach to seeking suppression of evidence or that he suffered any prejudice from that approach.  Relief under § 2255 is not warranted on this basis.

b.    <u>Fruits of Search Generally</u>

To the extent that Kibler believes Stobbs should have discovered materials attached to his § 2255 motion and asked for a hearing pursuant to *Franks v. Delaware*, 438 U.S. 154 (1978), the Court rejects that argument.  Kibler has attached to his § 2255 motion (1) information regarding the disposition of several criminal charges against Goosby, (2) the investigative report of Goosby's conversation with Hawkins and of Goosby's follow-up surveilled attempt to purchase drugs from Kibler, (3) a report of an investigator retained by Stobbs indicating his opinion that Goosby was not truthful in her statement to Hawkins and that law enforcement did not follow proper procedure in relation to the search of Kibler's house and the questioning of Kibler, and (4) sworn statements from Kibler himself, Kibler's wife and her granddaughter that Goosby was not in Kibler's house at the time she claims to have observed drugs there.

Even if Stobbs had discovered the materials attached to Kibler's motion, he was not deficient for failing to request a *Franks* hearing to challenge the propriety of the search warrant. There is probable cause for a search warrant where there is a substantial basis for concluding that a search would uncover evidence of wrongdoing.  *Illinois v. Gates*, 462 U.S. 213, 236 (1983). The totality of the circumstances must be considered, including "the veracity and basis of knowledge of persons supplying hearsay information."  *Id.* at 239-40 (internal quotations omitted).  The Court generally defers to the judgment of the judge issuing the warrant about whether probable cause exists unless the affidavit was knowingly or intentionally false or revealed a reckless disregard for the truth.  *Forman v. Richmond Police Dep't*, 104 F.3d 950, 957 (7th Cir. 1997) (citing *Franks*, 438 U.S. at 155-56).

If a defendant believes that an affidavit in support of a facially-valid search warrant contains materially false statements or omits material statements, he may attempt to challenge

9

the validity of the search warrant and the fruits of a search pursuant to that warrant. *Franks*, 438 U.S. at 164. However, affidavits in support of search warrants are presumed valid, and the "substantial preliminary showing" that *Franks* requires even to obtain a hearing must focus on the affiant's state of mind. *Franks*, 438 U.S. at 171; *United States v. Jones*, 208 F.3d 603, 607 (7th Cir. 2000); *United States v. Amerson*, 185 F.3d 676, 688 (7th Cir. 1999). "The defendant must offer evidence showing either that the warrant affiant lied or that the warrant affiant recklessly disregarded the truth because he in fact entertained serious doubts as to the truth of his allegations or had obvious reasons to doubt the veracity of the allegations." *Jones*, 208 F.3d at 607 (internal quotations omitted). "[T]he fact that a third party lied to the affiant, who in turn included the lies in a warrant affidavit, does not constitute a *Franks* violation. A *Franks* violation occurs only if the affiant knew the third party was lying, or if the affiant proceeded in reckless disregard of the truth." *United States v. McAllister*, 18 F.3d 1412, 1417 (7th Cir. 1994); *accord United States v. Roth*, 201 F.3d 888, 892 (7th Cir. 2000). Because the showing that *Franks* requires even to obtain a hearing is difficult to make, *Franks* hearings are rare. *United States v. Swanson*, 210 F.3d 788, 790 (7th Cir. 2000).

Even assuming that Goosby was lying to Hawkins that she was in Kibler's residence or what she saw there, the exhibits Kibler presented with his motion do not support the inference that Hawkins knowingly, intentionally or recklessly made a false affidavit or omitted material facts in that affidavit, or that he knew or recklessly disregarded the fact that Goosby was lying. On the contrary, the evidence shows that after talking to Goosby, Hawkins considered her basis for making her statements, sought corroborating information and evaluated her history of providing reliable information before making his affidavit. A *Franks* argument would have had no chance of success based on Kibler's exhibits.

10

Furthermore, Kibler cannot demonstrate a reasonable probability that the results of the proceedings would have been any different had Stobbs somehow succeeded on a *Franks* argument and had the Court suppressed the evidence at issue.  Even without the evidence seized in the search and Kibler's statements, there was overwhelming evidence against Kibler on all counts.

For all of the foregoing reason, the Court finds that Kibler has not established the Stobbs was constitutionally deficient for failing to discover and present evidence that had a reasonable probability of changing the results of the proceedings.

2.     Failure to Object to Hearsay Statements of Steven Davis

Kibler argues that Stobbs was constitutionally deficient for failing to object on hearsay grounds to the admission of out-of-court statements about which Steven Davis ("Davis") testified.  Specifically, Kibler believes Stobbs should have objected to Davis's testimony relating a conversation he had with Sandra Davis, one of Kibler's girlfriends, in which Sandra Davis told him the crack she sold him belonged to her and Kibler.  The government responds that Stobbs was not deficient because the testimony to which Kibler points was not hearsay at all but either actions actually observed by Davis or statements of a coconspirator.

Stobbs was not deficient for failing to make a hearsay objection to the testimony Kibler cites in the memorandum of law in support of his § 2255 motion because the testimony was not hearsay.  Hearsay is a statement made out of court that is offered to prove the truth of the matter asserted.  Fed. R. E. 801(c).  It is true that hearsay is generally not admissible.  *See* Fed. R. Evid. 802.  However, statements of a defendant's coconspirators during the course of and in furtherance of the conspiracy that are offered against the defendant are not hearsay.  Fed. R. Evid. 801(d)(2)(E).  Sandra Davis's statements fit well within this non-hearsay category.  The

11

evidence at trial sufficiently supported the conclusion that Sandra Davis was one of Kibler's

coconspirators, at least for evidentiary purposes.  *See Bourjaily v. United States*, 483 U.S. 171,

175 (1987) (a preponderance of the evidence standard is applicable to admissibility decisions

under Rule 801(d)(2)(E)).  It is further clear that Sandra Davis's statements occurred during the

conspiracy with Kibler and were made in order to facilitate the sale of drugs to Davis as part of

the conspiracy.  As for the remainder of Davis's testimony cited in Kibler's memorandum, it

contains Davis's observations of actions, not out-of-court statements offered to prove their truth.

It is therefore not inadmissible hearsay.  In view of the fact that Davis's testimony did not

contain inadmissible hearsay and that counsel is not deficient for failing to make a meritless

argument, Stobbs was not deficient for failing to make a hearsay objection to Davis's testimony.

Even if the Davis's testimony had contained inadmissible hearsay, Kibler has not

demonstrated that he was prejudiced by the erroneous admission of those statements.  In view of

the overwhelming evidence of Kibler's drug conspiracy activities with others such as

codefendant Katina Harbor and witnesses Fred Goosby and Zelman Johnson, there is no

reasonable probability that absent evidence of this one incident involving Sandra Davis the jury

would have rendered a different verdict, and there is no chance that admission of the testimony

in question rendered Kibler's trial unfair.

Because Kibler can satisfy neither prong of the *Strickland* test, he is not entitled to §

2255 relief on this basis.

   3. <u>Failure to Object to Opening Statement and Closing Argument</u>

     a. <u>Opening Statement</u>

Kibler believes his counsel was constitutionally ineffective for failing to object to the

portions of the government's opening statement that indicated it would present certain evidence

12

that ultimately it did not present.  Specifically, Kibler believes Stobbs should have objected to the government's statement that it would present testimony from:  (1) Kibler's codefendant Katina Harbor ("Harbor") that she sold crack cocaine for Kibler, (2) Jennifer Scott ("Scott") that she saw in Kibler's hotel room enough crack cocaine to fill a bucket, (3) Larry Mays ("Mays") that he purchased crack cocaine from Kibler on a daily basis over an extended period of time.  The government concedes that the evidence it presented in its case-in-chief did not exactly match the testimony it told the jury in its opening statement it expected to present.  It notes, however, that Harbor's and Scott's testimonies were not vastly different in kind than what the government told the jury to expect, and that it was not improper to refrain from calling Mays.  The government further notes that it and the Court repeatedly told the jury that the opening statement was merely a road map to assist the jury in understanding the evidence the government planned to present but was not the evidence itself.

The Court concludes that Stobbs was not deficient for failing to object to the government's opening statement.  In fact, the Court is puzzled as to how Kibler expected Stobbs to divine what evidence would or would not be presented before the evidence even began such that Stobbs would have known during the government's opening statement that an objection was appropriate.  In light of Harbor's and Scott's actual testimonies, it appears that the government had a good faith basis for offering the summaries of those witnesses' testimonies in its opening statement, and Kibler has offered no reason why Stobbs should have suspected any governmental misconduct with respect to their testimonies or that of Mays.

Furthermore, Kibler was not prejudiced from the government's failure to scrupulously stick to the road map it gave in its opening statements.  As the government noted, the jury received numerous warnings that opening statements were just that – opening statements – not

evidence.  The Court so instructed the jury before opening statements began, and the government

twice echoed this warning within its opening statement.  The government further warned the

jury,

> There are no promises in terms of what happens.  I've tried to give you a road
> map, but I have to tell you that after 20 years of trying cases, you never know
> what's going to happen in a trial.  Over hundreds of jury trials, things often do not
> come in the way you expect them to come in.  Things often come in that you
> don't expect to come in.

At the end of the evidence, the Court further instructed the jury that the attorneys' statements are

not evidence.  In view of the numerous warnings the jury received about the role of attorneys'

statements and the government's explanation to the jury that the actual evidence often differs

from the expected evidence, the Court cannot find that the jury was misled by the differences

between the government's opening statement and its evidence.  Kibler simply cannot establish

either prong of the *Strickland* test because Stobbs did not object to the government's opening

statement.  Therefore, he is not entitled to § 2255 relief on this basis.

<div align="center">b.   <u>Closing Argument</u></div>

Kibler further argues that Stobbs was deficient for failing to object to the government's

closing argument.  He believes Stobbs should have objected to the government's reference to (1)

the alleged hearsay testimony of Davis discussed earlier in this order, (2) the testimony of

Mendenall regarding Kibler's post-arrest statements, and (3) a conspiracy with government

agents.  The government argues that it acted properly in commenting on evidence that had been

presented at trial.

This issue is governed by the long-standing principle that it is proper to comment on

evidence presented at trial.  *United States v. Donovan*, 24 F.3d 908, 915 (7th Cir. 1994); *United

States v. Guajardo-Melendez*, 401 F.2d 35, 39-40 (7th Cir. 1968).  That is all the government did

<div align="center">14</div>

in Kibler's case.  Specifically with respect to the government's reference in its closing argument to Davis's and Mendenall's testimony, Kibler's real gripe appears to be that he believes the testimony itself contained inadmissible hearsay and that the government should not therefore have referred to it.  Kibler has provided no support for the proposition that it is improper for an attorney to refer to evidence admitted at trial, even if it was erroneously admitted.  In the absence of any caselaw in support of such a rule, Kibler cannot establish that Stobbs was constitutionally deficient for failing to object to the government's references to the testimony of Davis or Mendenall.  Furthermore, as discussed earlier in this order, Sandra Davis's statements in Davis's testimony were admissible as statements of coconspirators under Federal Rule of Evidence 801(d)(2)(E).  Similarly, Kibler's statements were admissible under Federal Rule of Evidence 801(d)(2)(A) as a statement of a party-opponent.  Thus, even if the rule Kibler proposes was accurate, the government did not act improperly, and Stobbs was not deficient for failing to object.

With respect to the government's reference to a conspiracy with government agents, there was nothing improper in the government's arguing that Kibler conspired with witnesses who were not acting as government agents during the conspiracy.  As discussed later in this order, a confidential informant does not forever immunize himself from prosecution for conspiracy by virtue of his or her limited cooperation with the government.

Because these aspects of the government's closing argument were proper, Stobbs was not constitutionally ineffective for failing to object to them, and Kibler is not entitled to § 2255 relief on this basis.

15

4.    Failure to Object to Nondisclosure of Favorable Evidence

Kibler argues that Stobbs was ineffective for failing to obtain evidence to impeach and discredit government witness Zelman Johnson ("Johnson"), whose purchase of crack cocaine from Kibler as a government confidential informant provided the basis for counts 2 and 3. Specifically, Kibler believes Stobbs should have but did not discover that Johnson (1) had a perjury charge pending against him at the time of Kibler's trial, apparently for submitting a false driver's license application, and (2) was not prosecuted for forgery of $2,500 worth of bad checks. Johnson was ultimately found guilty of the perjury charge after Kibler's criminal trial was complete. The government argues that it provided all the information about Johnson that it knew or reasonably should have known to Stobbs before trial, that it was not aware of the perjury charge against Johnson until Kibler filed the instant motion and that, in any case, the charge was not material to the outcome of the case in light of Johnson's substantial criminal history that was presented to the jury. The government further notes that since it was not aware of Johnson's pending charges, Johnson could not have been biased in his testimony hoping to get a benefit from the government in connection with those charges.

Under *Brady v. Maryland*, 373 U.S. 83, 87 (1963), and *Giglio v. United States*, 405 U.S. 150, 155 (1972), the prosecution has the duty to ensure that criminal trials are fair by disclosing evidence that is favorable to the defendant or that impeaches a government witness. The prosecutor must disclose not only evidence known to him, but he also "has a duty to learn of any favorable evidence known to the others acting on the government's behalf in the case, including the police." *Kyles v. Whitley*, 514 U.S. 419, 437 (1995). There is no doubt that a defendant is entitled to disclosure of all evidence that "would tend to exculpate" him, *Brady*, 373 U.S. at 88, and all evidence that casts doubt on the credibility of prosecution witnesses and is material to the

16

outcome of the trial.  *See United States v. Bagley*, 473 U.S. 667, 676 (1985);  *Giglio*, 405 U.S. at

155; *see Rodriguez v. Peters*, 63 F.3d 546, 555 n.10 (7th Cir. 1995).  Evidence is material to the

outcome of the trial if "its suppression undermines confidence in the outcome of the trial,"

*Bagley*, 473 U.S. at 678, because there is a "reasonable probability" that disclosure would bring

about a different result at trial, *Kyles*, 514 U.S. at 434.  *United States v. Hamilton*, 107 F.3d 499,

509 (7th Cir. 1997);  *United States v. Gonzalez*, 93 F.3d 311, 316 (7th Cir. 1996).  However,

"[t]he materiality standard is not met by '[t]he mere possibility that an item of undisclosed

information might have helped the defense, or might have affected the outcome of the trial. . . .'"

*Hamilton*, 107 F.3d at 509 (quoting *United States v. Agurs*, 427 U.S. 97, 109-10 (1976)).  *Brady*

and *Giglio* do not require disclosure of "every possible shred of evidence that could conceivably

benefit the defendant."  *Hamilton*, 107 F.3d at 509.

     In this case, Stobbs sought discovery from the government, and the government

represented to Stobbs that all discovery, including a report from the National Crime Information

Center ("NCIC"), a nationwide computerized index of criminal justice information, had been

provided.  It is well within the realm of reasonable performance to rely on such representations

and disclosure from the government in the absence of any red flags that would alert the defense

that government disclosure was not complete.  Kibler has not alleged that any such red flags

existed such that reasonably competent counsel would have been alerted that there was more

impeachment material to be had.  Reasonable counsel is not required to search every jurisdiction

for pending charges against a government witness.  For this reason, Kibler has not alleged

anything that would reveal Stobbs's performance as deficient.

     Even if Stobbs had been deficient for failing to uncover information about Johnson's

pending perjury charge and prior instances of forgery, Kibler cannot demonstrate that he was

prejudiced by this deficiency.  In this case, the evidence at trial established that Johnson had a substantial criminal history; he testified that he had anywhere from 30 to 50 convictions for theft and that he could not keep track of all of his convictions.  It also establishes that he used drugs, was given benefits from the government on numerous occasions, and continued to expect benefits from the government for his continued cooperation.  There was, indeed, substantial material to impeach Johnson, and Stobbs effectively highlighted in his cross-examination Johnson's incentives for testifying in the government's favor.  In light of the plethora of impeachment evidence that was presented, the Court does not believe that evidence of one additional, as yet unadjudicated charge, albeit for perjury, would have caused the jury to disbelieve Johnson.  Furthermore, a significant part of Johnson's testimony regarding count 1 was corroborated to some extent by Katina Harbor's testimony (she testified to the same event but that it occurred at a different location), and a significant part of his testimony regarding counts 2 and 3 was supported by recordings of the two telephone conversations and two controlled buys in which he participated and about which he testified.  The tapes were strong evidence corroborating Johnson's testimony.  As for the instances of forgery, the government informed the jury of that information, and Kibler has not explained how Stobbs could have used that information further to convince the jury Johnson was lying in his testimony.  In light of the substantial impeachment information that was used and the strong evidence corroborating a significant portion of Johnson's testimony, there is simply no reasonable probability that the outcome of the trial would have been any different had Stobbs confronted Johnson with the perjury charge or the instances of forgery.

        To the extent that Kibler seeks to raise a direct due process challenge based on the government's failure to disclose evidence to impeach one of its witnesses, as for Johnson's prior

18

uncharged forgeries, the matter was brought out at trial.  Where evidence is disclosed in time for

the defendant to make use of its benefit, there is no due process violation.  *See United States v.

Stott*, 245 F.3d 890, 903 (7th Cir. 2001).  Kibler has not explained how disclosure of this

evidence at trial was too late to be useful or how Stobbs's learning about it prior to trial could

have so assisted his cross-examination on the issue as to have a reasonable probability of making

a difference in the outcome of the trial.

As for any due process challenge to the prosecution's failure to produce evidence of

Johnson's pending perjury charge prior to Kibler's trial, the Court rejects the argument.  For the

same reasons the Court found that Kibler was not prejudiced by any deficiency on the part of

Stobbs in discovering the pending charge, the Court finds that the perjury charge is not *Brady* or

*Giglio* material.  As noted above, *Brady* and *Giglio* require the production of material evidence,

that is, evidence that if suppressed undermines the confidence in the outcome of the trial.

*Bagley*, 473 U.S. at 678.  In light of the evidence corroborating Johnson's testimony, there was

simply too much other impeaching evidence to conclude that the absence of one more piece

undermined the Court's confidence in the outcome of the trial.

For the foregoing reasons, relief under § 2255 is not warranted on the ground that there

was any *Brady* or *Giglio* violation.

5.    Failure to Object to Use of Perjurious Testimony

Kibler argues that Stobbs was constitutionally ineffective for failing to object to the

government's knowing use of false testimony of Mendenall relating to his interactions with

Goosby in the hours preceding the search of Kibler's house.  Specifically, he contends that

Mendenall's statement that he sent Goosby back into Kibler's residence to make a controlled

buy is false because it was actually Hawkins that transported Goosby to the area and because

19

Goosby actually went to a third person's house, not Kibler's.  The government argues that

Stobbs was not deficient for failing to object to Mendenall's testimony because the testimony

was not false.  It notes that Mendenall indicated that law enforcement *planned* to send Goosby

back to Kibler's residence *after she stopped by the third party's residence* but that Mendenall

never testified that the plan was actually accomplished.  It was not, and Mendenall did not testify

otherwise.

A prosecutor's knowing use of false testimony violates the due process clause.  *Shasteen

v. Saver*, 252 F.3d 929, 933 (7th Cir. 2001);  *Anderson v. United States*, 403 F.2d 451, 454 (7th

Cir. 1968) (citing *Mooney v. Holohan*, 294 U.S. 103, 112 (1935)).  In the context of a trial,

"[w]hen the defendant argues that the government allegedly used perjured testimony, to warrant

setting the verdict aside and ordering a new trial, the defendant must establish that:  (1) the

prosecution's case included perjured testimony; (2) the prosecution knew or should have known

of the perjury; and (3) there is a reasonable likelihood that the false testimony could have

affected the judgment of the jury . . . . 'Mere inconsistencies in testimony by government

witnesses do not establish the government's knowing use of false testimony.'"*Shasteen*, 252

F.3d at 933 (quoting *United States v. Verser*, 916 F.2d 1268, 1271 (7th Cir. 1990)).

In this case, Stobbs was not deficient for failing to object to Mendenall's testimony.

First, Kibler has presented nothing but self-serving allegations that Mendenall's testimony was

false and has pointed to nothing from which Stobbs could have determined that the government

knew Mendenall was not testifying truthfully such that he could have objected during the

testimony.  The first portion of Mendenall's testimony Kibler cites refers to what Mendenall

*decided* to do after talking to Goosby, not to what actually happened.  Kibler has presented no

evidence that Mendenall did not, in fact, decide on this course of action.  The second portion of

20

Mendenall's testimony Kibler cites refers to sending Goosby back into Kibler's residence but makes no representation that Goosby was sent directly to that destination.  In fact, it appears from Kibler's § 2255 motion and its attachments that law enforcement sent Goosby out intending that she stop by the house of a third party on her way to Kibler's residence.  In reality, she never reached her ultimate destination, but that does not render Mendenall's testimony false.  That it was Hawkins that dropped Goosby off at the third party's residence does not render Mendenall's testimony false because Mendenall's statement that "we sent Elizabeth Goosby" obviously included other law enforcement officers in the term "we."  Finally, the third portion of Mendenall's testimony Kibler cites indicates that Mendenall relayed what he had learned to a judge in support of a search warrant.  In fact, law enforcement did not tell the judge about the failed attempt to purchase drugs at Kibler's residence.  The failed effort, however, was irrelevant to establishing probable cause precisely *because* it had failed.  Mendenall's testimony does not indicate that anyone told the judge about the irrelevant failed attempt to purchase drugs from Kibler, and it is therefore not false.

Second, and more importantly, even if Mendenall's testimony could be considered false and Kibler could show that the government knew it was false, the falsities related to minor details and were not the type of statements that could have affected the jury's judgment of Mendenall's credibility or of the disposition of the case as a whole.

Furthermore, Kibler suffered no prejudice from Stobbs's failure to object to the testimony as perjury.  Had Stobbs made such an objection, the Court would have overruled it and told Stobbs to explore the issue on cross-examination.  Had Stobbs inquired into the statements on cross examination, it is clear that they would have been revealed as inconsequential in light of the other evidence at trial.  Stobbs's decision to focus on cross-examination that promised more

21

fruitful results was clearly within the realm of professionally competent representation, and Kibler suffered no prejudice as a result of this choice.

For these reasons, the Court rejects Kibler's ineffective assistance of counsel argument and, to the extent he makes one, his prosecutorial misconduct argument as grounds for § 2255 relief.

<div style="text-align:center">6.    <u>Advice not to Testify</u></div>

Although Kibler does not develop this argument in his motion, he mentions in passing in his affidavit that Stobbs advised him that if he testified he would "blow his chances of a reversal on appeal" and that Stobbs had preserved the relevant issues for appeal.  Kibler claims that Stobbs's advice was outside the range of professionally competent counsel.

The government argues that Stobbs sufficiently counseled Kibler on his right not to testify in his own defense and gave a reasonable recommendation that he not testify.  It offers an affidavit from Stobbs explaining that, after a 15-minute conversation on the topic, he advised Kibler not to testify because of the danger that the government might be able to "put him into a corner" with respect to counts 2 and 3, the charges of possessing crack cocaine.

The Court finds that Stobbs's recommendation that Kibler not testify in his own defense was not constitutionally deficient.  The transcript reflects that Stobbs explained Kibler's right against self-incrimination to him and that Kibler himself chose not to testify, consistent with the advice Stobbs had given him.  Stobbs's advice took into account his opinion that juries like to have a defendant say to them directly, "I didn't do it," but also factored in his concern that Kibler's testifying in an effort to escape from count 1 would give the government an opportunity to elicit testimony that would make convictions on counts 2 and 3 more likely.  Stobbs believed, and the record confirms, that the evidence against Kibler on count 1 was overwhelming.

<div style="text-align:center">22</div>

Furthermore, had Kibler testified, he would likely have been impeached with his prior felony drug convictions.  Thus, Kibler's testimony was unlikely to be very persuasive to the jury in view of the other overwhelming evidence against him.  Stobbs made the rational judgment call that the value of Kibler's testimony with respect to count 1 would not outweigh the danger of making conviction more likely – that is, "putting himself into a corner" and "blowing his chances of a reversal on appeal" – on counts 2 and 3.  Stobbs's decision to rely on other evidence and impeachment to seek acquittal on count 1 was within the range of professionally competent assistance, and Kibler's decision to follow Stobbs's competent advice can be blamed on no one but himself.

The Court notes that Stobbs rightly did not found his advice on the possibility of a sentence enhancement for obstruction of justice if Kibler testified falsely and was convicted on count 1.  Had Kibler been convicted of conspiring to distribute more than 5 grams of crack cocaine, as the Court of Appeals found a reasonable jury would have found had they been asked the question, *United States v. Kibler*, 279 F.3d 511, 518-19 (7th Cir. 2002), his career offender status would still have dictated an offense level of 37 and a criminal history category of VI, *see* U.S.S.G. § 4B1.1, yielding a sentencing range of 360 months to life.  Any enhancement the Court would have imposed for obstruction of justice because of false trial testimony would have increased Kibler's offense level but would not have affected the sentencing range, which still would have been 360 to life.  With respect to count 2 in particular, Kibler was sentenced to the statutory maximum sentence of 30 years, so an obstruction of justice enhancement would not have changed anything.

The enhancement would not even have made a difference if Kibler had only been convicted on count 2.  In that case, regardless of his relatively low relevant conduct for that

23

count (1.4 grams of crack cocaine), his career offender status would have established his offense level of 34 and his criminal history category of IV, *see* U.S.S.G. § 4B1.1.  An obstruction of justice enhancement would have had no effect because his offense level would have been determined by U.S.S.G. § 4B1.1, not U.S.S.G. § 2D1.1 and U.S.S.G. § 3C1.1.

In addition to failing to allege any deficient performance by Stobbs, Kibler has failed to demonstrate any prejudice from Stobbs's advice.  He claims that he would testify in very general terms that the witnesses against him were lying.  He has not, however, pointed to any specific testimony he would give that would have had a reasonable chance of calling into question the overwhelming evidence against him.  Thus, Kibler has also failed to establish the second prong of the *Strickland* test.

For the foregoing reasons, the Court finds that Kibler has not shown that Stobbs's advice to Kibler regarding whether to testify in his own defense was not constitutionally deficient or that he suffered any prejudice from the advice Stobbs gave in that regard.

### 7.   Impeachment of Harbor

Kibler also makes passing reference to Stobbs's failure to use a letter written by codefendant Harbor to impeach her testimony.  The letter essentially admits that Harbor lied when she made a statement to law enforcement about Kibler.  The government responds that Stobbs's decision not to use the letter in cross-examination was a reasonable one.

First of all, Kibler is wrong to say that Stobbs did not use the letter to impeach Harbor. The letter at issue is a suicide note Harbor wrote in jail before a failed attempt to kill herself.  At trial, Stobbs showed her the letter, asked her about it and had it admitted into evidence, thus making it available to the jury to review in its entirety.  He did not, however, specifically ask her about the statement in the letter that she had lied, as Kibler claims he should have done.  On

redirect, however, the government did, and Harbor explained that she had made up some of the things she told law enforcement but confirmed that everything she had testified to at trial was true.

Stobbs's strategy in not aggressively cross-examining Harbor about the letter was a reasonable decision well within the range of competent performance. The evidence submitted by the government shows that Stobbs considered being more aggressive in cross-examining Harbor, that is, "beating up on Harbor," but decided it was not worth the risk of alienating a jury, a frequent result of being tough on a sympathetic witness. This was a matter of professional judgment that the Court will not second guess.

Kibler has also not demonstrated that he suffered any prejudice from the manner in which Stobbs chose to confront Harbor with the letter. By the time Stobbs questioned her, the government had already elicited impeaching evidence from Harbor about her incentives to testify favorably for the government in return for a sentence reduction, her prior felony conviction, her pending felony charge and her prior drug use. The government's re-direct examination further highlighted the exact passage of the letter that Kibler wanted Stobbs to use: the admission that Harbor lied to law enforcement. Thus, the jury was well aware of substantial impeachment evidence even in the absence of aggressive cross-examination by Stobbs. Kibler has not offered any reason showing that, had Stobbs used the letter differently in his cross-examination, there would have been a reasonable probability that the jury would have disbelieved Harbor or that the proceedings would have had a different result in light of the overwhelming evidence against Kibler other than Harbor's testimony.

For these reasons, § 2255 relief is not available based on Stobbs's use of Harbor's letter to impeach her.

25

8.      Use of Investigator's Statement

Kibler faults Stobbs also with failing to call defense investigator Conrad Baetz ("Baetz") to testify in his defense.  Stobbs decided not to call Baetz because any testimony he could offer was hearsay since he did not have any personal knowledge of the events at issue at Kibler's trial. This was a correct and responsible decision.

Furthermore, Kibler has not shown any prejudice from Stobbs's failure to offer Baetz's hearsay testimony.  Had he called Baetz to testify, the Court would have sustained objections to his hearsay testimony, and the jury would not have heard it.

9.      Cumulative Error

To the extent that Kibler might be asserting that Stobbs's cumulative error rendered his performance constitutionally ineffective, the Court finds that Kibler has not demonstrated a reasonable probability that, but for the foregoing alleged errors by counsel, even if considered in combination, the result of the proceedings would have been different.

B.      Appellate Counsel's Effectiveness

For the following reasons, the Court finds that Green was not constitutionally ineffective in relation to Kibler's appellate proceedings.  Appellate counsel is not deficient for failing to "raise every non-frivolous issue under the sun."  *Mason v. Hanks,* 97 F.3d 887, 893 (7th Cir. 1996).  Counsel is only deficient if he "fails to appeal an issue that is both obvious and clearly stronger than one that was raised."  *Winters v. Miller*, 274 F.3d 1161, 1167 (7th Cir. 2001) (citing *Williams v. Parke,* 133 F.3d 971, 974 (7th Cir. 1997)).  Furthermore, a petitioner can show prejudice from this deficiency only by demonstrating that the issue "may have resulted in a reversal of the conviction, or an order for a new trial."  *Mason*, 97 F.3d at 893.  The Court will address each alleged instance of ineffectiveness in turn.

26

1.    Failure to Raise Insufficiency of the Evidence Argument

Kibler faults Green with failing to argue on appeal that the evidence was insufficient to support his conviction on count 1.  Kibler argues that although he knew his alleged conspirators and associated with them, he did not participate in any conspiracy.  He also argues that to the extent that there is evidence that he participated in a conspiracy, it was with government agents and therefore wasn't a true conspiracy for which he could be convicted.  The government argues that the evidence that Kibler conspired with others was overwhelming and that a sufficiency of the evidence argument had no chance of success on appeal.

Kibler has not made sufficient allegations to establish that Green was constitutionally deficient in his decision not to argue on appeal that the evidence was insufficient to support Kibler's conspiracy conviction.  As a preliminary matter, the Court notes that it is very difficult to prevail on a sufficiency of the evidence argument.  When considering such an argument, the Court of Appeals views the evidence in the light most favorable to the prosecution and will reject the argument if "'*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'"  *United States v. Curtis*, 324 F.3d 501, 505 (7th Cir. 2003) (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979));  *see United States v. Parra*, 402 F.3d 752, 760 (7th Cir. 2005).

The Court has reviewed the entire trial proceedings and has determined that Green's decision to pursue other arguments on appeal was reasonable in light of the record.  The trial proceedings contain overwhelming direct and circumstantial evidence from which a rational jury could have found Kibler guilty of the charged conspiracy and not just someone present during the conspiracy of others, someone who conspired solely with government agents or someone who simply sold drugs without a conspiracy agreement.  A sufficiency of the evidence argument

27

had almost no chance of success.  Thus, Green's decision not to pursue this argument was well within the range of professionally competent assistance and did not prejudice Kibler's case.

 2. Failure to Raise Trial Court's Refusal to Give Jury Instruction

Kibler also faults Green for failing to raise on appeal the Court's refusal of an instruction stating that, as a matter of law, government informants cannot be considered to be coconspirators:

> If you find the Defendant conspired only with Government agents, or government
> informants then you cannot find Defendant guilty of conspiracy.

Def. Prop. Instr. 31.  The Court refused this instruction finding that it was not supported by the evidence.  Kibler now argues that all of the witnesses against him who were not government employees were government informants.  The government argues that government informants can be coconspirators during times when they are not functioning as government agents.  It further notes that Johnson was the only government informant who interacted with Kibler during his service as a government agent (the controlled buys that constituted counts 2 and 3) and that, in light of the overwhelming evidence that Kibler conspired with Johnson and others at times other than those two buys, appeal of that issue would have been meritless.

Kibler has not made sufficient allegations to establish that Green was constitutionally deficient in his decision not to argue on appeal that the Court erred in failing to give his proposed instruction number 31.  A jury instruction is proper if it is adequately supported by the record and is a fair and accurate summary of the law.  *United States v. Stott*, 245 F.3d 890, 903(7th Cir. 2001);  *United States v. Lanzotti*, 205 F.3d 951, 956 (7th Cir. 2000);  *United States v. Wimberly*, 79 F.3d 673, 676 (7th Cir. 1996).  However, a defendant is only entitled to an instruction on a particular theory of defense if "1) the instruction is a correct statement of the

law, 2) the evidence in the case supports the theory of defense, 3) that theory is not already part of the charge, and 4) a failure to provide the instruction would deny a fair trial." *United States v. Mutuc*, 349 F.3d 930, 935 (7th Cir. 2003) (citing *United States v. Chavin*, 316 F.3d 666, 670 (7th Cir. 2002)).

In this case, Green was not deficient for failing to raise the issue on appeal because the argument was not clearly stronger than the ones he raised. It is true that a defendant cannot be convicted of conspiring only with government agents. *United States v. Duff*, 76 F.3d 122, 127 (7th Cir. 1996). This is because "[a] conspiracy is an agreement between two or more people to commit an unlawful act, and there is no real agreement when one 'conspires' to break the law only with government agents or informants. The elements of the crime are not satisfied unless one conspires with at least one true co-conspirator." *United States v. Mahkimetas*, 991 F.2d 379, 383 (7th Cir. 1993) (internal quotations and citations omitted). However, this rule applies only if the agreement that forms the basis of the alleged conspiracy occurred *while* the individual was serving as an agent. If the individual was not serving as a government agent at the time, he was fully capable of genuinely agreeing with another to break the law, that is, of committing a criminal conspiracy.

In this case, the only substantial testimony about activity conducted by a government informant *while he was a government agent* was about Johnson and involved the two controlled buys charged in counts 2 and 3, respectively. There was a possibility that the jury could have considered those activities of Johnson's to be part of the conspiracy, but in light of the overwhelming evidence that Kibler conspired with Johnson and others outside of those two controlled buys, there is no way a reasonable jury could have found that Kibler *only* conspired with Johnson while Johnson was acting as a government agent. In addition, in its closing

29

argument the government did not argue that Johnson's controlled buys supported conviction on the conspiracy count.  Instead, it focused on Kibler's agreement with others and with Johnson at times when he was not acting as a government agent.  The requested instruction was simply not necessary to a fair trial.  In light of this overwhelming evidence and the government's appropriate argument, there is no possibility that, had Green raised the issue on appeal, the Court of Appeals would have found anything other than harmless error.  Thus, Kibler has failed to demonstrate either prong of the *Strickland* test with respect to Green's failure to raise the jury instruction issue on appeal.

3.     Failure to Raise Trial Counsel's Errors

Kibler argues that Green was ineffective for failing to raise on appeal the issues of Stobbs's ineffectiveness at the trial level and of virtually every one of the decisions the Court made in Kibler's case.  To the extent that Kibler complains of counsels' performance already discussed in this order, the Court rejects his ineffective assistance of appellate counsel for the same reason discussed in those sections of this order.  To the extent that Kibler has failed to substantially support his allegations of error or ineffectiveness with developed argument or relevant facts, he has waived those arguments.  Perfunctory, underdeveloped and unsupported arguments are waived.  *See Spath v. Hayes Wheels Int'l-Ind., Inc.*, 211 F.3d 392, 397 (7th Cir. 2000); *Perry v. Sullivan*, 207 F.3d 379, 382 (7th Cir. 2000).

C.     *Blakely*

In his supplement to his original § 2255 petition, Kibler argues that, in light of *Apprendi v. New Jersey*, 530 U.S. 466 (2000), and *Blakely v. Washington*, 542 U.S. 296 (2004), his sentence was improper.  To the extent that his argument raises *Apprendi* issues that were decided in Kibler's direct appeal, he has not shown a change of circumstance or law justifying a

30

reexamination of that law of the case.  *See Olmstead v. United States*, 55 F.3d 316, 319 (7th Cir. 1995);  *Belford v. United States*, 975 F.2d 310, 313 (7th Cir. 1992).  To the extent that he raises new issues, his arguments rely on *Blakely*.  Specifically, he argues that the Court erred in finding by only a preponderance of the evidence that Kibler had two prior felony drug convictions that rendered him a career offender.  The government responds arguing that *Blakely* is not retroactive to cases on collateral review.

To understand Kibler's argument, a brief review of *Blakely* and *United States v. Booker*, 543 U.S. 220 (2005), is in order.  *Blakely* applied the principles set forth in *Apprendi v. New Jersey*, 530 U.S. 466 (2000), to a Washington state sentencing scheme similar to the federal sentencing guidelines.  In *Blakely*, the defendant pled guilty to second-degree kidnaping, a class B felony that carried a standard sentencing range of 49 to 53 months.  *Blakely*, 542 U.S. at 299. In general, class B felonies in Washington could not be punished by prison sentences exceeding ten years.  *Id.*  The sentencing judge found that aggravating factors existed to justify an exceptional sentence of 90 months, still well within the permissible class B felony range but also well beyond the standard range for second-degree kidnaping.  *Id.* at 300.  The Supreme Court held, however, that because the facts to which the defendant pled could only support a standard range sentence, *Apprendi* precluded the judge from making further findings to enhance the sentence, even if the sentence still fell within the class B felony range.  *Id.* at 303-04.  In essence, the *Blakely* Court held that "the 'statutory maximum' for *Apprendi* purposes is the maximum sentence a judge may impose *solely on the basis of the facts reflected in the jury verdict or admitted by the defendant.*"  *Id.* at 303 (emphasis in original).  Therefore, because only the 49 to 53 month range was justified by the defendant's plea and any higher sentence was subject to reversal considering *only the facts admitted in the plea*, the defendant's sentence must fall within

31

that range.  *Id.* at 304.

      In the lower *Booker* decision, 375 F.3d 508 (7th Cir. 2004), the Seventh Circuit Court of Appeals applied *Blakely* to the federal sentencing guidelines system and held that (other than criminal history) only facts proven to a jury beyond a reasonable doubt or admitted by a defendant could be used to calculate a sentence under the guidelines.  *Booker*, 375 F.3d at 510-12.  The Supreme Court ultimately confirmed that *Blakely* applies to the federal sentencing guidelines and that application of the guidelines as written is unconstitutional because of their mandatory nature.  *Booker*, 543 U.S. at 226-27, 233.  However, the Supreme Court held that the proper remedial measure to save the guidelines is not to require that special findings be submitted to a jury.  *Id.* at 249-58.  The proper remedial measure, the Court decided, is to strike the portions of the Sentencing Reform Act of 1984 that make application of the guidelines mandatory as opposed to advisory:  18 U.S.C. §§ 3553(b)(1) and 3742(e).  *Id.* at 258-64.  Those provisions having been stricken from the Sentencing Reform Act, judges, "while not bound to apply the Guidelines, must consult those Guidelines and take them into account when sentencing."  *Id.* at 264;  *see* 18 U.S.C. § 3553(a)(4) & (5).

      However, the Court of Appeals for the Seventh Circuit has held that *United States v. Booker*, 543 U.S. 220 (2005), is not retroactively applicable on collateral review.  *McReynolds v. United States*, 397 F.3d 479, 480-81 (7th Cir.), *cert. denied*, 125 S. Ct. 2559 (2005);  *see also Curtis v. United States*, 294 F.3d 841, 844 (7th Cir. 2002) (*Apprendi* does not apply retroactively on collateral review);  *Schriro v. Summerlin*, 542 U.S. 348, 358 (2004) (holding that *Ring v. Arizona*, 536 U.S. 584 (2002), which relied on the same principles as *Apprendi*, does not apply retroactively on collateral review).  For this reason, it could be of no assistance to Kibler, and he is not entitled to § 2255 relief on that basis.

Even if *Booker* was retroactively applicable on collateral review, it would not aid Kibler. He faults the Court for making the finding that he had two prior drug felony convictions that established him as a career offender.  However, the fact of a prior conviction does not have to be found by a jury beyond a reasonable doubt, even under *Apprendi*, *Blakely* and *Booker*.  *See Booker*, 543 U.S. at 244;  *Blakely*, 542 U.S. at 301-02;  *Apprendi*, 530 U.S. at 490; *Almendarez-Torres v. United States*, 523 U.S. 224 (1998).  So long as the nature of the prior conviction is reflected in a source that has the "conclusive significance of a prior judicial record," the issue need not be tried to a jury and the Court may make the finding.  *Shepard v. United States*, 544 U.S. 13, 25 (2005) (citing *Taylor v. United States,* 495 U.S. 575, 602 (1990). In this case, it was clear from Kibler's prior convictions that they were felony drug convictions. Because the Court had to look no further than the face of the conviction itself to make such a determination, the Court did not violate Kibler's constitutional rights when it found him to be a career offender.

Because "the motion and the files and records of the case conclusively demonstrate that the prisoner is entitled to no relief," 28 U.S.C. § 2255, the Court finds that no hearing is necessary.

## IV.   Motions for Discovery (Docs. 2, 18-24 & 26)

In this motion, Kibler asks the Court to allow discovery in connection with this § 2255 motion.  Specifically, he seeks permission to use a variety of discovery tools to investigate Goosby's reliability, Mendenall's alleged false testimony, the government's alleged prosecutorial misconduct in suborning perjury and failing to produce *Brady* evidence, all of which were discussed earlier in this order.  In one set of motions, he seeks leave of the Court to propound interrogatories and requests for admissions to Mendenall, the Assistant United States

33

Attorney who prosecuted this case, the State's Attorney and an Assistant State's Attorney involved in securing the search warrant for Kibler's residence, Stobbs, Johnson's attorney in his state court perjury proceedings and Hawkins.  The government has responded to some of Kibler's motions (Doc. 25), and Kibler has replied to the government's response (Doc. 30).

In a § 2255 proceeding, the Court may for good cause authorize a party to conduct discovery.  Rules Governing § 2255 Proceedings, Rule 6(a).  The Court should allow discovery "'where specific allegations before the court show reason to believe that the petitioner may, if the facts are fully developed, be able to demonstrate that he is . . . entitled to relief.'"  *Bracy v. Gramley,* 520 U.S. 899, 908-09 (1997) (§ 2254 context) (quoting *Harris v. Nelson,* 394 U.S. 286, 300 (1969)).  "Good cause, however, cannot exist where the facts alleged do not provide a basis for relief."  *Hubanks v. Frank,* 392 F.3d 926, 933 (7th Cir. 2004) (citing *Matta-Ballesteros v. Henman*, 896 F.2d 255, 259 (7th Cir. 1990)), *cert. denied*, 544 U.S. 1025 (2005).

Kibler has not shown good cause for discovery in this case.  Even if all the facts he alleges in his § 2255 motion are true , it would not be enough to show that Stobbs or Green was constitutionally ineffective, that the government violated *Brady* requirements or in any other way behaved unconstitutionally or that Kibler's sentence was improper under *Apprendi*, *Blakely* or *Booker*.  Further investigation of facts would amount to no more than an unfounded fishing expedition.  For this reason, the Court will deny the motions for discovery (Docs. 2, 18, 19-24 & 26).

## V.      Motion for Appointment of Counsel (Doc. 41)

Kibler asks the Court to appoint him counsel in this case in light of the documents he believes he needs to review and the discovery he believes he needs to obtain.  Whether to appoint an attorney to represent an indigent § 2255 petitioner is within the sound discretion of

34

the district court. *Winsett v. Washington,* 130 F.3d 269, 281 (7th Cir. 1997). There is absolutely

no right to appointment of counsel case unless the absence of counsel would result in

fundamental unfairness impinging on due process rights, *Winsett*, 130 F.3d at 281 (citing

*LaClair v. United States*, 374 F.2d 486, 489 (7th Cir. 1967)); *see* 18 U.S.C. § 3006A(a)(2)(B)

("Whenever . . . the court determines that the interests of justice so require, representation may

be provided for any financially eligible person who . . . is seeking relief under section . . . 2255

of title 28."). Counsel is required to be appointed only "'if, given the difficulty of the case and

the litigant's ability, [the petitioner] could not obtain justice without an attorney, [he] could not

obtain a lawyer on [his] own, and [he] would have had a reasonable chance of winning with a

lawyer at [his] side.'" *Id.* (quoting *Forbes v. Edgar,* 112 F.3d 262, 264 (7th Cir. 1997)). The

Court also has inherent authority to appoint counsel to ensure the orderly prosecution of

litigation in the district. Members of the bar of this Court are obligated to accept appointments,

provided an appointment is not made more than once during a 12-month period. Local Rule

83.1(i).

    After reviewing Kibler's petition, the Court finds that Kibler is well able to articulate the

contours of his arguments and is able to obtain justice without an attorney. It further finds that

the absence of counsel in the case would not result in an unfair proceeding impinging on

Kibler's due process rights. As discussed above, Kibler's claims have no merit, and he would

not stand any better chance of prevailing with counsel.

**IV.    Conclusion**

    For the foregoing reasons, the Court:

•    **DENIES** Kibler's § 2255 motion (Doc. 1) and its amendments (Docs. 31 & 33);

•    **DENIES** Kibler's motions for discovery (Docs. 2, 18-24 & 26);

- **DENIES** Kibler's motion for appointment of counsel (Doc. 41); and

- **DIRECTS** the Clerk of Court to enter judgment accordingly.

**IT IS SO ORDERED.**
**DATED:  July 10, 2006**

<div style="margin-left: 40%;">

s/ J. Phil Gilbert
**J. PHIL GILBERT**
**DISTRICT JUDGE**

</div>